LLEN M. BRONCHETTI (SBN 226975)
**GREENBERG TRAURIG, LLP**
12760 High Bluff Drive, Suite 240
San Diego, CA 92130
Telephone: 619.848.2523
Facsimile: 949. 732.6501
Ellen.Bronchetti@gtlaw.com

LINDSAY E. HUTNER (SBN 238998)
PRIYA E. SINGH (SBN 342030)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone:  415.655.1300
Facsimile:  415.707.2010
Lindsay.Hutner@gtlaw.com
Priya.Singh@gtlaw.com

Attorneys for Defendant Little Caesar Enterprises, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CUEVAS, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>LITTLE CAESAR ENTERPRISES, INC.; and DOES through 10, inclusive,<br><br>Defendants. | Case No. 3:23-cv-03166-RFL<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO INVALIDATE ARBITRATION AGREEMENTS**<br><br>*[Filed concurrently with Declaration of Ellen Bronchetti and Declaration of Jeffrey Ambrosia]*<br><br>Judge:     Hon. Rita F. Lin<br>Date:      December 17, 2024<br>Time:      10:00 a.m.<br>Location:  U.S. District Court<br>           San Francisco Courthouse<br>           Courtroom 15, 28th Floor<br>           450 Golden Gate Avenue<br>           San Francisco, CA 94102<br><br>Action Filed:   May 12, 2023<br>Removal:        June 26, 2023 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

III. LEGAL STANDARD .......................................................................................................... 3

IV. LEGAL ARGUMENTS ....................................................................................................... 4

    a. The 2024 MDRA Was Only Promulgated to Newly Hired Colleagues. ................... 4

    b. The Lack of an Opt-Out Provision Does Not Make A Voluntary Agreement Coercive. ...................................................................................................................... 4

    c. The MDRA's Section 10(g) Did Not Mislead Putative Class Members ................. 7

    d. Plaintiff's Requested Relief is Far Too Extreme Given the Situation and Communications at Issue. ............................................................................................. 9

    e. Plaintiff's Request to Limit Arbitration Agreements Violates the FAA ................ 11

V. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Balasanyan v. Nordstrom, Inc.*,
   No. 10-CV-2671-JM-WMC, 2012 WL 760566 (S.D. Cal. 2012) .......................................... 9

*Chamber of Commerce of the United States of America v. Bonta*,
   62 F.4th 473 (9th Cir. 2023) ............................................................................................... 11

*Chen-Oster v. Goldman, Sachs & Co.*,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020) ................................................................................... 5

*In re Currency Conversion Fee Antitrust Litig.*,
   361 F. Supp. 2d 237 ............................................................................................................ 11

*Dominguez v. Better Mortgage Corporation*,
   88 F.4th 782 (9th Cir. 2023) ............................................................................................... 10

*Friedman v. Intervet Inc.*,
   730 F. Supp. 2d 758 (N.D. Ohio 2010) ................................................................................. 8

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   270 F.R.D. 509 (N.D. Cal. 2010) .................................................................................... 3, 10

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................................................ 3, 9

*Jimenez v. Menzies Aviation Inc.*,
   No. 15–CV–02392–WHO, 2015 WL 4914727 (N.D. Cal. 2015) ..................................... 4, 6

*Kater v. Churchill Downs Incorporated*,
   423 F. Supp. 3d 1055 (W.D. Wash. 2019) ............................................................................ 6

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW(EX), 2018 WL 2422582 (C.D. Cal. 2018) ......................................... 9

*Mohamed v. Uber Technologies, et al*,
   115 F. Supp. 3d 1024 (N.D. Cal. 2015) ................................................................................ 8

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 638 (2022) .............................................................................................................. 8

**State Cases**

*Adolph v. Uber Technologies, Inc.*,
    14 Cal.5th 1104 (2023) ................................................................................................ 8

*Iqbal v. Ziadeh*,
    215 Cal. Rptr. 3d 684 (2017) ....................................................................................... 7

*Semprini v. Wedbush Securities Inc.*,
    101 Cal. App. 5th 518 (2024) .................................................................................. 8-9

**State Statutes**

Cal. Civ. Proc. Code § 1859 .............................................................................................. 7

**Rules**

Fed. R. Civ. P. 23(d) ........................................................................... 1, 3, 5, 8, 9, 11

## I. INTRODUCTION

Years before this Action was filed, Defendant Little Caesar Enterprises, Inc. ("LCE") lawfully provided employees (employees are referred herein as "colleagues") the option to sign arbitration agreements. In fact, LCE promulgated its first arbitration agreement in 2015 (eight (8) years before this Class Action lawsuit was filed) giving its colleagues the choice to voluntarily agree to arbitrate their individual claims and waive their rights to file a class action claim. As it regularly updates its agreements as a matter of employment practice, in September 2024, LCE lawfully updated its arbitration agreements. This 2024 arbitration agreement, which is the subject of this Motion, is entitled "Mutual Dispute Resolution Agreement" ("MDRA").

Plaintiff files this present Motion to Invalidate LCE's Arbitration Agreement ("Motion to Invalidate") solely arguing that the MDRA is a coercive and misleading communication under Federal Rule of Civil Produce 23(d) ("Rule 23(d)") with putative class members. They rely on three primary arguments—all of which are not factually and/or legally valid: (1) the MDRA does not include an opt-out agreement, (2) the MDRA conflates Private Attorneys General Act ("PAGA") and class action waivers, and (3) the MDRA misleads putative class members into believing that they cannot "participate" in the current class action or PAGA matters. Plaintiff's assertions are unpersuasive. First, the MDRA is not misleading or coercive such that it interferes with putative class members' rights. Contrary to Plaintiff's assertions, the MDRA is not offered as a condition of employment, thus the lack of an opt-out provision is not coercive. Second, the inclusion of Section 10(g) in the MDRA is not misleading because it does not waive a colleagues' right to file a PAGA lawsuit (in accordance with Section 2 of the Agreement), but instead, properly discloses all pending lawsuits to newly hired colleagues so they can determine whether to voluntarily agree to waive their rights.

Nevertheless, while LCE maintains that its communications with colleagues do not violate Rule 23(d), in the event corrective action is needed, LCE requests this Court allow LCE continue its business practice to issue an updated arbitration agreement that includes opt out language and removes Section 10(g), as specifically requested by Plaintiff, without involving a third-party administrator.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2023, Plaintiff filed this present class action lawsuit in the Santa Clara Superior Court, Case No. 23CV41083, alleging eleven (11) causes of action for: (1) violations of Business and Professions Code § 17200, *et seq*; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide required meal periods; (5) failure provide required rest breaks; (6) failure to provide wages when due upon separation of employment; (7) failure to provide accurate itemized wage statements; (8) failure to reimburse for necessary business expenditures; (9) failure to timely pay during employment; (10) failure to pay sick leave; and (11) secret underpayment of wages. *See* Declaration of Ellen Bronchetti ("Bronchetti Decl."), ¶ 2.

On June 26, 2023, LCE removed this case on grounds that the Northern District had original jurisdiction in accordance with the Class Action Fairness Act ("CAFA"). At the time of Removal, LCE identified there were nearly 19,000 colleagues who could be putative class members. (Dkt. No. 1 at 6:13-15; 8:5-9; Dkt No. 1-2 at ¶ 7). Then in August and December 2023, LCE identified that there were 682 putative class members. (Dkt. No. 15 at 5:17-19; 11:6-9; 12:8-16; *accord* Dkt. No. 27 at 4:12-14.) However, in December 2023, LCE identified that in order to accurately identify the individuals who signed and did not sign arbitration agreements, LCE would need to manually search for *all* signed physical copies of every colleagues' arbitration agreements in two (2) of its business locations: Anaheim, California and Corrigan, Michigan. *See* Bronchetti Decl. ¶ 4. The process took several weeks and provided LCE with a more accurate and updated number of the putative class member who did not sign arbitration agreements. *Id.*

From 2015- November 3, 2023, LCE promulgated an arbitration agreement entitled the Mutual Agreement to Arbitrate Claims ("MAAC"). *See* Declaration of Jeffrey Ambrosia ("Ambrosia Decl."), ¶ 5.  From November 3, 2023 to September 4, 2024, LCE promulgated a second arbitration agreement entitled the Dispute Resolution Agreement ("DRA").[1] *Id.*  Starting

---

[1] Plaintiff does not assert the 2015 MAAC or 2023 DRA is invalid or is the subject of this present Motion. Notably, on October 11, 2024, LCE provided Plaintiff a copy of the DRA upon receipt of this Motion to ensure Plaintiff had the necessary information needed if he sought to amend his Motion. Plaintiff had weeks to ask any questions or amend this Motion to address concerns, if any, relating to either the 2015 MAAC or the 2023 DRA and individuals who signed those agreements, but failed to do so. *See* Bronchetti Decl. ¶ 6, Ex. A. Consequently, Plaintiff waives his right to argue these agreements are invalid and as a result LCE is not required to address any arguments relating to these agreements.

September 5, 2024, LCE promulgated a third arbitration agreement, which is the subject of this Motion, titled Mutual Dispute Resolution Agreement ("MDRA"). *See* Ambrosia Decl., ¶ 6. The MDRA was/is disseminated only to newly hired colleagues. *Id.,* ¶ 7. LCE issued the MDRA per its general practices it has maintained since early 2015, with some changes. Rather than present arbitration agreements to colleagues in person, LCE now presents the agreement via its Human Resources Portal, WorkDay. *Id.,* ¶ 7. There is no deadline to submit an executed MDRA and colleagues can take as long as they need when choosing to execute the MDRA. *Id.,* ¶ 8. Colleagues are requested but not required to return an executed copy of the arbitration agreement. At any time, colleagues can access and review the MDRA, as well as save a copy and/or print one for their own purposes. *Id.,* ¶ 7-9. Colleagues can voluntarily elect not to sign the MDRA. *Id.,* ¶ 9. In the event a colleague voluntarily elects not to sign the MDRA, the colleague is still hired and begins work. *Id.* Human Resources becomes aware that a colleague does not want to sign the MDRA and simply notes it in the system. *Id.,* ¶ 10. In fact, there were 38 colleagues voluntarily elected to not sign the MDRA. *Id.,* ¶ 9. LCE does not require colleagues to sign the MDRA as a condition of employment.[2] *Id.*

### III.    LEGAL STANDARD

Under Rule 23(d), courts can control communications with putative class action members if needed. Courts have broad discretion to exercise this control over and issue orders governing the parties' communications with putative class members. However, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Guifu Li v. A Perfect Day Franchise, Inc*., 270 F.R.D. 509, 517 (N.D. Cal. 2010). While a court has a duty to oversee communications, the power must be exercised cautiously and may not exercise its power under Rule 23(d) "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).

---

[2] LCE never required colleagues sign arbitration agreements as a condition of employment.

### IV. LEGAL ARGUMENTS

Employers have a right to enter into arbitration agreements with their employees. This right is not restricted in the pendency of a class action lawsuit. Indeed, so long as the employer communication is not improper, courts will not find employers are prohibited from communicating with putative class members. *See Jimenez v. Menzies Aviation Inc.*, No. 15–CV–02392–WHO, 2015 WL 4914727 at *6 (N.D. Cal. 2015) (The Court noted that finding the ADR policy unenforceable would not effectively bar a company from adopting an arbitration agreement, so long as the communications were not coercive the potential for abuse would be ameliorated.)

    a.   <u>The 2024 MDRA Was Only Promulgated to Newly Hired Colleagues.</u>

As an initial matter, Plaintiff is incorrect in his assertion that the 2024 MDRA was issued to previously employed colleagues. As noted above, only newly hired colleagues are requested to sign the MDRA. *See* Ambrosia Decl., ¶ 7. Nevertheless, Plaintiff asserts LCE's sudden change of its customary practices since 2015 supports his claim that the MDRA is coercive based on two declarations provided by Defendant's Director of Human Resources Jeffrey Ambrosia filed in Support of LCE's Removal and Declaration in Support of Defendant's Motion to Compel Arbitration for Plaintiff Nathalie Aldana. *See* Dkt. No. 15-1; Plaintiff's Request for Judicial Notice, Ex. A. Plaintiff claims that per Mr. Ambrosia's declaration, LCE *only* requests newly hired colleagues to sign arbitration agreements. Yet, this is a misstatement and misconstrues Mr. Ambrosia's declarations. Specifically, Mr. Ambrosia does not state that LCE *only* requests newly hired employees to sign arbitration agreements. *See* Plaintiff's Request for Judicial Notice, Ex. A. This declaration simply states that the process occurs during onboarding for newly hired colleagues, it does not reflect whether LCE does indeed ask current colleagues to sign new copies of arbitration agreements. Nevertheless, such information is irrelevant, as Plaintiff is incorrect that the MDRA was issued to preexisting employees. LCE only issued the MDRA to <u>newly hired</u> colleagues, effective September 5, 2024.

    b.   <u>The Lack of an Opt-Out Provision Does Not Make A Voluntary Agreement Coercive.</u>

Plaintiff claims that the MDRA is misleading and coercive because it "forces employees into it without providing any opportunity to opt out." *See* Plaintiff's Motion to Invalidate, pg. 6.

Page 4

He further falsely claims that LCE places employees in "an untenable position: either sign the MDRA, which waives their rights to participate in the class action, or lose their job." *See Id*. Plaintiff further states, without any supporting evidence, that LCE issues the MDRA as a condition of employment. Plaintiff cannot provide supporting evidence to show that signing the MDRA is a condition of employment because there is none. Contrary to Plaintiff's arguments, the MDRA does not contain language that requires or identifies to newly hired colleagues that signing the MDRA is a condition of employment or that it is mandatory in order to work for LCE. Rather, the MDRA states that by signing the agreement, the colleague understands they *voluntarily* agree to be legally bound by the terms. As such, colleagues are free to **not** sign the MDRA and that decision has no impact on their employment with LCE. *See* Ambrosia Decl., ¶ 9. Indeed, 38 colleagues elected not to sign the MDRA. *Id*. Accordingly, Plaintiff's assertion that colleagues are either required to waive their right to participate in this Class Action or lose their job is simply not true.

Moreover, as Plaintiff correctly states, the MDRA does not contain an opt-out provision. Yet, the lack of an opt-out provision, particularly when execution of arbitration agreements is not a condition of employment, does not mean that the MDRA is coercive. This is especially true in situations where there is no pre-existing relationship as here—i.e., the MDRA was only provided to newly hired colleagues. Considering that LCE did not require any pre-existing colleagues to sign the MDRA, Plaintiff needs to prove more than just an employer-employee relationship amongst LCE and newly hired colleagues to demonstrate enough coerciveness to invalidate an arbitration agreement. *Chen-Oster v. Goldman, Sachs & Co.,* 449 F.Supp.3d 216, 265 (S.D.N.Y. 2020) *objections overruled* (S.D.N.Y., Sept. 15, 2021, No. 10CIV6950ATRWL) 2021 WL 4199912 (Reviewing California Court Opinions, "[t]he Court is not persuaded, however, that this employment relationship alone is enough to demonstrate sufficient potential for coercion to merit relief under Rule 23(d). The Supreme Court has rejected the argument that an employer-employee relationship alone evidences the coercion necessary to overturn an arbitration agreement."). [3]

---

[3] Given that there is no pre-existing relationship, there was no "unilateral" modification to the MDRA as Plaintiff contends. The newly hired colleagues were not parties to any previous arbitration agreements promulgated by LCE and because there were no prior agreements executed with colleagues who signed the MDRA, there could be no "unilateral modification"

Further, while Plaintiff relies on various cases to illustrate that courts find coerciveness where there is no opt-out provision, such as in *Jimenez v. Menzies Aviation Inc*. and *Kater v. Churchill Downs Incorporated*, these cases are factually distinguishable. Notably, courts have not conclusively determined that including an opt-out provision in an arbitration agreement is necessarily required in each case. Rather, depending on the circumstances presented, courts use their discretion to identify whether an opt-out provision is needed. In fact, this is clearly evident in the cases Plaintiff cites to where the courts identify that including an opt-out provision is less coercive in situations where employees are required to waive their rights as a putative class member *as a condition of employment*/continued use of a product. In *Jimenez*, the Court concluded that an opt-out agreement was required where an Alternative Dispute Resolution policy stated that the employees entered into the arbitration agreement "in consideration of and as material condition of employment' evidentiality making the agreement a condition of employment." *Jimenez v. Menzies Aviation Inc*., No. 15–CV–02392–WHO, 2015 WL 4914727 at *6, n. 5. (N.D. Cal. 2015). [4] In *Kater*, Plaintiffs were injured customers who sought compensation from Defendant for lost chips they purchased on Defendant's website. *Kater v. Churchill Downs Incorporated*, 423 F.Supp.3d 1055 (W.D. Wash. 2019). The *Kater* court concluded that the arbitration agreement required an opt-out provision for pre-existing customers because an ultimatum was issued – relinquish class action rights and continue playing the games provided by Defendant or maintain their rights but forfeit access to games they already paid for. *Id*., at 1062.

Consequently, Plaintiff cannot successfully argue that including an opt-out provision in this situation is mandatory to ameliorate any alleged coercive conduct. Courts have not required the inclusion of this provision in situations when signing is a *voluntary* choice and *not* a condition of employment. Nor should this Court deem it necessary in this case when the potential for

to the opt-out provision.

---

[4] The Court in *Jimenez* also determined that the ADR policy failed to include a disclosure of the pending class action lawsuit, however it deemed the ADR policy unenforceable to employees that were putative class members and had pending claims. The Court stated, "this ruling does not affect the enforceability of the ADR policy as to new employees who are not class members." *Jimenez v. Menzies Aviation Inc*., 2015 WL 4914727, at *6.

interference with putative class members' rights remains strikingly low. LCE offered newly hired colleagues the ability to sign the MDRA with no ultimatums, time constraints or promise of employment. The MDRA was offered to newly hired colleagues to sign voluntarily and contains no language that execution is a condition of employment because it is not. As such, the cases cited are factually distinguishable to highlight that the lack of an opt-out provision in the MDRA is not so coercive to interfere with the putative class members' rights.

<u>The MDRA's Section 10(g) Did Not Mislead Putative Class Members</u>

Next, Plaintiff asserts that the inclusion of Section 10(g) in the MDRA is misleading for two reasons: (1) it conflates a PAGA and class waiver of claims and (2) broadly identifies that colleagues cannot <u>participate</u> in the Cuevas or Aldana matters.

As an initial matter, LCE does not agree that the inclusion of Section 10(g) is misleading or confusing. Section 10 fully discloses to the newly hired colleague all pending lawsuits against LCE, including both the Cuevas lawsuits, as well as the Aldana and Cuevas Class and PAGA lawsuits in state court. This includes providing colleagues information relating to which court the cases were filed, the cases names, case numbers and court contact information to allow all colleagues the ability to research the cases and contact opposing counsel, if desired, to obtain information prior to signing the MDRA. As such, by providing all of this information and not requiring colleagues execute the MDRA within a particular time, it is not so misleading or coercive to interfere with the rights of the colleagues.

While read in conjunction with Section 2 and 5 of the MDRA, it is evident that any participation relating to the disclosure of pending cases relates to the Class Action.[5] Nor is Section 10(g) in violation of *Viking River* or *Adolph* as it does not preclude a colleague from filing a PAGA cause of action in court and requiring the colleague proceed to arbitrate any of their labor

---

[5] Plaintiff's claim relating to contract interpretation of specific and general provisions is unpersuasive. In the event this Court finds that Section 10(g) conflicts with Section 2, then based on Plaintiff's own argument, Section 2 should prevail, as it is the more specific provision in relation to Section 10(g). *See Iqbal v. Ziadeh*, 215 Cal. Rptr. 3d 684, 692 (2017) (citing Cal. Civ. Proc. Code § 1859). Plaintiff argues that the term "participation" as used in Section 10(g) is far more inclusive and lists non-exclusive ways a colleague may participate in the matter, including as a witness, insisting in investigations or consulting with Plaintiff's counsel. Yet, by identifying the various ways this term can be interpreted, Plaintiff himself supports the idea that Section 10(g) is more general.

code violations, unless first arbitrating their individual claims. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 638 (2022); *See also Adolph v. Uber Technologies, Inc.*, 14 Cal.5th 1104 (2023). More importantly, as Plaintiff is well aware, after months of meeting and conferring and exchanging data, LCE does not prevent any colleagues from participating in any way with relation to the PAGA causes of action as is evident in that there are nearly 24,000 colleagues in the PAGA "class," Plaintiff has received all data required for the PAGA members and no PAGA members have been excluded from receiving a Belaire West Privacy Notice.

Nonetheless, Plaintiff asserts in his Motion that he is not asking the Court to determine the scope or enforceability of the MDRA for any reason beyond the rights of the putative class members in this Action. Yet, reviewing whether the MDRA unlawfully waives PAGA rights to colleagues who are aggrieved employees is indeed beyond the scope of this Motion. *See* Motion to Invalidate, fn. 15. Thus, any argument from Plaintiff that seeks to invalidate the MDRA on grounds that it allegedly included a PAGA waiver is not within the scope of this Motion or ripe for this Court. *Mohamed v. Uber Technologies, et al*, 115 F.Supp.3d 1024, 1031–32 (N.D. Cal. 2015) ("in exercising its supervisory powers over communication to the class under Rule 23 this Court did not purport to rule on the ultimate question of the unconscionability or enforceability of Uber's arbitration provision(s)… Consequently, the Court never reviewed Uber's arbitration clause to determine whether it contained a number of substantively unconscionable terms, most notably including a nonseverable and illegal PAGA waiver, which might still be cognizable notwithstanding the minimization of procedural unconscionability.")

Additionally, Plaintiff is reaching by arguing that the use of the term "participation" is coercive and/ or misleading. Courts use this exact term when referencing whether communications to putative class members under Rule 23(d) are misleading or coercive. Specifically, courts have identified that employers should disclose the putative class members' rights to *participate* in any pending class action lawsuits. *Friedman v. Intervet Inc.*, 730 F.Supp.2d 758, 763 (N.D. Ohio 2010) ("defendant has procured settlements and releases without informing putative class members of what they are possibly giving up: *participation* in the pending putative class action.") (emphasis added); *Semprini v. Wedbush Securities Inc.*, 101 Cal.App.5th 518, 531

Page 8
DEFENDANT'S OPPOSITION TO THE MOTION TO INVALIDATE ARBITRATION AGREEMENTS

(2024) ("The arbitration agreements themselves do not specifically reference the class action or otherwise inform the signatories that they are potentially giving up their existing rights to *participate* in a pending case.")(emphasis added); *Balasanyan v. Nordstrom, Inc.*, No. 10-CV-2671-JM-WMC, 2012 WL 760566, at *fn. 3 (S.D. Cal. 2012) ("The ultimate decision was based on the fact that even if employees were aware of the agreement, they might not have been fully aware that they were forfeiting their rights to *participate* in the lawsuit.")(emphasis added); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2018 WL 2422582, at *6 (C.D. Cal. 2018) ("Audible asked putative class members to give up their ability to *participate* in the pending action (or any class action for that matter) in exchange for continued use of the Audible service.)(emphasis added).

Moreover, LCE is not denying or silencing colleagues from their right to contact putative class counsel. LCE appropriately disclosed to putative class members that there were pending class action lawsuits that they were waiving their rights to participate in if they agreed to sign the agreement. The use of the term "participate" is not misleading or coercive as many Courts have used similar terms when informing employers of their requirements to comply with Rule 23(d).

As identified above, the MDRA is not coercive, deceptive or misleading and the Court should not declare it null and void.

      c. <u>Plaintiff's Requested Relief is Far Too Extreme Given the Situation and Communications at Issue.</u>

Rule 23(d) provides the Court broad discretion when a party engages in behavior that threatens the fairness of litigation. However, Rule 23(d) does not prohibit communications with an employer and an employee. Indeed, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. at 100 ("[S]uch a weighing − identifying the potential abuses being addressed − should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.") Plaintiff's requested relief seeking to restrict LCE from attempting to obtain any arbitration agreements as it relates to this

Class Action is extreme and not proper given the lack of potential interference with the rights of the parties.

The cases Plaintiff cites to justify this extreme position are, again, factually distinguishable. In *Dominguez*, the Court of Appeal approved the District Court's relief after it agreed that the court needed to supervise communications that were based on coercive tactics. *Dominguez v. Better Mortgage Corporation*, 88 F.4th 782 (9th Cir. 2023). Here, the employer issued a new employment agreement that had conflicting language compared to a release agreement, did not explain information about the pending lawsuit, the company did not explain to employees about the arbitration agreement clause, and the agreement did not explicitly identify to employees that signing the agreement was a condition of employment, when it was.

Further, Plaintiff "draws" from *Guifu Li* to request relief from this Court to restrict LCE from seeking any opt outs or arbitration agreements, but once more the facts that led the court in *Guifi Li* to order curative notice are greatly different than the ones presented here. *Guifu Li v. A Perfect Day Franchise, Inc.,* 270 F.R.D. at 512. In *Guifu Li*, the court granted a request seeking curative notice and invalidation of opt-outs after the opt-out agreements were only presented in English to a large Chinese speaking population. It was also alleged that the employer had one on one meetings with its workers where it stated that if workers participated in the class action lawsuit they would be terminated, result in a permanent record, the employer would call the employees future employers to ensure the employees could not get another job, and would report the worker to the IRS. *Id.*

As identified above, LCE disagrees that there was any coercive or misleading language contained in the MDRA that requires curative notice or court intervention. The requested "limited and narrow" relief restricting LCE from seeking any additional opt-outs or arbitration agreements is anything but. The cases Plaintiff cites to as instructive for this Court to approve the "limited and narrow" curative notice contain vastly different facts, where the coercion in those cases is evident whereas in this situation, it is not.

Contrary to Plaintiff's assertions, LCE did not issue the MDRA to specifically preempt current colleagues' the ability to join this case – rather it maintained its ordinary business practices

requesting colleagues sign an arbitration agreement (a practice that was implemented well before the filing of this Class Action). The only aspect of the arbitration agreements that changed since the implementation of the MAAC was including a full disclosure of the pending lawsuits, and not including an opt-out provision, which once more LCE is not required to include in the case where it is not a condition of employment.

### d. Plaintiff's Request to Limit Arbitration Agreements Violates the FAA

Plaintiff's requested relief seeking to prevent LCE from obtaining any further arbitration agreements as it pertains to this Class Action, including any newly hired colleagues, violates the Federal Arbitration Act ("FAA"). *See* Plaintiff Motion to Invalidate. This Court should not agree to limit LCE's ability to issue any further arbitration agreements as it relates to this case because in doing so, it would violate public policy in favor of arbitration agreements. *In re Currency Conversion Fee Antitrust Litig.,* 361 F. Supp. 2d 237, 248 ("The FAA establishes a liberal policy in favor of arbitration as a means to reduce the expense and delay of litigation."); *Chamber of Commerce of the United States of America v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023) ("A law that "inhibit[s] a party's willingness to create an arbitration contract" stands as an obstacle to the purposes of the FAA.")

As such, in light of the liberal policy in favor of arbitration agreements, if this Court finds that LCE violated Rule 23(d), then it should in its discretion provide LCE the opportunity to remove or edit any alleged coercive communications. LCE should be able to provide any updated arbitration agreement to newly hired colleagues, even as it applies to this case, which as claimed by Plaintiff is likely an easy fix by adding an opt-out provision and simply removing Section 10(g) of the MDRA.

## V.     CONCLUSION

Plaintiff exacerbates that the MDRA is coercive and misleading that it effectively interferes with putative class members' rights. Consequently, LCE requests this Court deny Plaintiff's requested relief seeking to invalidate the MRDA, issue curative notice, and prevent LCE from issuing additional arbitration agreements relating to this Class Action. In the event the Court does find ther is a level of coercion, LCE requests the Court allow LCE to issue arbitration

agreements relating to this Action that removes Section 10(g) (as requested by Plaintiff) and provide an opt-out provision.

Dated: November 12, 2024

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: _____
Ellen Bronchetti
Lindsay Hutner
Priya E. Singh
Attorneys for Defendant
Little Caesar Enterprises, Inc.