LAW OFFICES OF MARK YABLONOVICH
Mark Yablonovich (SBN 186670)
Mark@Yablonovichlaw.com
Monica Balderrama (SBN 196424)
Monica@Yablonovichlaw.com
Tony Roberts (SBN 315595)
Tony@Yablonovichlaw.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-2511
Telephone: (310) 286-0246 • Fax: (310) 407-5391

CAPSTONE LAW APC
Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Daniel Jonathan (SBN 262209)
Daniel.Jonathan@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811 • Fax: (310) 943-0396

Attorneys for Plaintiff Jose Cuevas and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CUEVAS, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>LITTLE CAESAR ENTERPRISES, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:23-cv-03166-RFL<br><br>**PLAINTIFF JOSE CUEVAS' REPLY IN SUPPORT OF MOTION TO INVALIDATE ARBITRATION AGREEMENTS, RESTRICT DEFENDANT LITTLE CAESAR ENTERPRISES, INC. FROM SOLICITING OPT-OUTS, AND ISSUE A CORRECTIVE NOTICE PURSUANT TO FRCP 23**<br><br>Judge:     Hon. Rita F. Lin<br>Date:      December 17, 2024<br>Time:      1:30 p.m.<br>Location:  *Videoconference Only*<br>           U.S. District Court<br>           San Francisco Courthouse<br>           Courtroom 15, 18th Floor<br>           450 Golden Gate Avenue<br>           San Francisco, California 94102<br><br>Action Filed:   May 12, 2023<br>Removal:        June 26, 2023 |

**TABLE OF CONTENTS**

I.   INTRODUCTION ..........................................................................................................1

II.  ARGUMENT................................................................................................................2

    A.   The Concealed and Deceptive DRA Should Be Invalidated................................2

    B.   The Misleading MDRA Should Be Invalidated ...................................................6

    C.   The DRA and MDRA Were Constructed to Deceptively Obtain Signatures.........7

    D.   Plaintiff's Requested Relief Prevents Deception and Concealment—Neither of Which Are Protected by the FAA ........................................................................8

III. CONCLUSION .............................................................................................................9

Page i

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO INVALIDATE ARBITRATION AGREEMENTS, RESTRICT DEFENDANT FROM SOLICITING OPT-OUTS, AND ISSUE A CORRECTIVE NOTICE PURSUANT TO FRCP 23

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Chen-Oster v. Goldman, Sachs & Co.*, 449 F.Supp.3d 216 (S.D.N.Y. 2020) ............................................. 7

*Doe 1 v. Swift Transportation Co., Inc.*, 2017 WL 735376 (D. Ariz. Feb. 2017) ........................................ 9

*Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 50 (N.D. Cal. 2010) ............................................... 8

*Gulf Oil Co. v. Bernard*, 452 U.S. 89,1981) ................................................................................................ 8

*Jimenez v. Menzies Aviation Inc.*, 2015 WL 4914727 (N.D. Cal. 2015) ..................................................... 5

*Kater v. Churchill Downs Incorporated*, 423 F.Supp.3d 1055 (W.D. Wash. 2019) ................................... 7

*Synopsys, Inc. v. Mentor Graphics Corp.*, 2013 WL 6577143 (N.D. Cal. 2013) ......................................... 2

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(d)(1) ............................................................................................................................... 8

28 U.S.C. § 2072 ......................................................................................................................................... 8

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO INVALIDATE ARBITRATION AGREEMENTS, RESTRICT DEFENDANT FROM SOLICITING OPT-OUTS, AND ISSUE A CORRECTIVE NOTICE PURSUANT TO FRCP 23

## I. INTRODUCTION

Defendant's arbitration agreements, both the Dispute Resolution Agreement ("DRA") and Mutual Dispute Resolution Agreement ("MDRA"), should be invalidated. Defendant engaged in a shell-game, actively concealing the DRA, and now claims that Plaintiff forever "waived" any challenge to the DRA. Plaintiff could not waive a challenge to an agreement that was deliberately hidden. The DRA only surfaced after Plaintiff filed this motion despite Plaintiff's discovery request for all versions of Defendant's arbitration agreements and multiple oral requests for copies of the arbitration agreements during the time the DRA was in effect.

While Defendant concealed the DRA from Plaintiff and his counsel, it simultaneously failed to disclose this pending Action to employees who were signing the DRA. By hiding the DRA from Plaintiff and the pending Action from employees, Defendant "picked off" class members, causing them to unknowingly forfeit their right to participate in this Action. Thus, the DRA misled employees, creating the false impression that it was a standard employment document unrelated to any legal action. Because employees forfeited their legal rights without adequate notice, the DRA should be invalidated.

When Defendant's concealment of the DRA was no longer possible and it could no longer obscure the agreement's deficiencies—most notably its failure to inform employees about this pending Action—Defendant pivoted to a new tactic by introducing the MDRA. Through the MDRA, Defendant has begun informing newly-hired employees about this Action but has imposed broad restrictions that prevent those employees from any form of participation in the litigation. These restrictions extend beyond waiving class membership: barring employees from acting as witnesses, consulting with Plaintiff's counsel, or assisting in this litigation in any capacity. Such overreaching language infringes upon employees' fundamental rights to communicate with counsel and participate in legal proceedings, thereby obstructing the administration of justice and impeding this Court's management of this putative class action.

These actions warrant the Court's intervention to invalidate the DRA and MDRA, issue a curative notice to affected employees, and restrict Defendant from further attempting to undermine this litigation.

## II. ARGUMENT

### A. The Concealed and Deceptive DRA Should Be Invalidated[1]

Defendant Little Caesar Enterprises, Inc. ("Defendant") concealed the DRA for almost a year.

On October 5, 2023, Plaintiff Jose Cuevas ("Plaintiff") requested that Defendant produce all versions of its arbitration agreements through his First Set of Requests for Production of Documents.[2] Defendant deliberately failed to fully comply with this clear and unambiguous request.

On November 5, 2023, Defendant secretly promulgated the DRA without informing Plaintiff—or apparently its counsel. (Dkt. No. 48 at 6:23-24.)

On November 20, 2023, instead of producing all versions of its arbitration agreements—which should have included both the DRA and the MAAC—Defendant produced only the MAAC.[3] Defendant withheld the DRA, the version of its arbitration agreement that was in effect at the time of its discovery response. Unbeknownst to Plaintiff, from November of 2023 through August 2024, Defendant used the DRA to have class members unknowingly exclude themselves from participating in this case, as the DRA failed to inform employees about the pending litigation.

On August 13, 2024, on the eve of mediation, Defendant abruptly decreased its estimate of the class size, reporting a reduction from 4,807 to 4,137 members—approximately 670 fewer than the number provided in June and July 2024.[4] This raised immediate concerns, prompting Plaintiff to ask how the class size could have diminished so dramatically.

---

[1] Defendant submitted the DRA into evidence in opposition and argued about it. Plaintiff has the right to challenge the evidence and arguments, especially given Defendant's manipulations and concealment. *See, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 2013 WL 6577143 at *1 (N.D. Cal. 2013) ("Synopsys's Administrative Motion for Leave to File Sur–Reply is hereby DENIED ... Mentor does not "[raise new arguments and evidence] ... in its reply brief" ... but, rather, responds to arguments made in Synopsys's opposition").

[2] Plaintiff's First Set of Requests for Production of Documents, Request Number 72, requested: "All (non-privileged) drafts, iterations, editions, and versions of YOUR arbitration agreements for CLASS MEMBERS during the RELEVANT CLASS PERIOD."

[3] The MAAC was already part of the public record at that time. (*See* Plf.'s RJN, Ex. A.) After making various objections, Defendant responded to Request Number 72 as follows: "Without waiving the forgoing objections, and subject to Defendant's reasonable interpretation of this Request, Defendant responds as follows: Defendant will produce the responsive, non-privileged documents in its possession custody or control, including an example of an arbitration agreement."

Defendant only produced a sample of the MAAC (CUEVAS_CLASS_LCE-000631-000637) which, again, mirrors the document that Plaintiff filed contemporaneously with the moving papers as Exhibit A to the Request for Judicial Notice. (*See* Dkt. No. 44-1 at 20-27.)

[4] Dkt. No. 43 at 3-4, ¶¶ 8-14; *accord* Dkt. Nos. 43-1–43-4.

1    What cannot be emphasized enough is the fact that the decrease of class members by definition would not include "new hires" because any newly-hired employee who signed an arbitration agreement would not have been counted as a putative class member in the first place.

Defendant states that the MDRA is only signed by new hires but does not disclose to the Court the impact of its arbitration agreements as a whole. Defendant omits that the DRA targeted current non-exempt managers who likely had higher rates of regular rate of pay violations. When Plaintiff ran an analysis of the individuals who were suddenly dropped from the putative class list, the bulk of those employees were those who had been employed longer and therefore likely triggered the most exposure for Defendant.

On August 19, 2024, only after direct inquiry, Defendant's counsel revealed that a "new" arbitration agreement[5] (i.e., the then-undisclosed DRA) had been implemented, causing the dramatic drop in class size. (Dkt. No. 43 at 4, ¶ 14.) Plaintiff's counsel promptly requested a copy of this new agreement and any accompanying communications provided to employees who were presented with it. (*Id.*) At that time, the Mutual Dispute Resolution Agreement (MDRA) had not yet been promulgated.

Despite several requests, Defendant continued to withhold the DRA. (*See, e.g.*, *id.* at 4, ¶¶ 14-15.) On September 4, 2024, Plaintiff's counsel again requested a copy of the arbitration agreement. (*Id.* at 4, ¶ 15.)[6] The following day, September 5, 2024, also unbeknownst to Plaintiff, Defendant began promulgating the MDRA to replace the still-concealed DRA. (Dkt. No. 48-2, at 2 ¶ 5.)

On September 17, 2024, Defendant, through its counsel, provided a sample of the MDRA but once again failed to disclose the DRA. (Dkt. No. 48-2 at 2, ¶ 5.) This omission occurred even though in August of 2024, Plaintiff had specifically requested the arbitration agreement that was in effect at that time—which was the DRA, not the later-implemented MDRA. (*Id.*)

Defendant's use of this concealed DRA on the putative class was far from standard business

---

[5] The arbitration agreement that caused the dramatic drop was not the MAAC, which had been in existence since 2015 and a copy of which Plaintiff already possessed. The arbitration agreement that was the subject of counsel's August 19, 2024 conversation was the yet-to-be disclosed DRA that Defendant did not provide to Plaintiff until after Plaintiff filed his motion.

[6] *See also* Dkt. No. 43-5 at 5 (Plaintiff's September 11, 2024 email to Defendant stated, among other things: "We asked you for copies of the arbitration agreements back on August 20, 2024, before mediation, but you have yet to provide us with a copy. Our goal is to avoid a motion to enjoin Defendant and/or invalidate the arbitration agreements.")

practice. Rather than merely obtaining the DRA from newly-hired employees—as it claims to do with the MDRA—Defendant deliberately sought agreements from individuals already involved in pending litigation against it, particularly those who, for example, had accrued significant overtime and worked a substantial number of meal period-qualifying shifts.

On October 8, 2024, Plaintiff moved to invalidate Defendant's arbitration agreement that Defendant had stated was shrinking the putative class's size. It was not until October 11, 2024—nearly a year after Plaintiff's initial discovery request—that Defendant, through its counsel, finally provided a copy of the DRA to Plaintiff. (Dkt. No. 48-1.) Even then, Defendant's counsel claimed ignorance about when it learned of the DRA, when the DRA went into effect, and how many individuals had signed it, promising to provide this information. (*Id.*) However, counsel's alleged ignorance does not matter because it is **Defendant's knowledge and concealment that matters**, and Defendant's failure to disclose is imputed on its counsel.[7] In the face of its effort to mislead Plaintiff by only producing (1) a long-ago retired arbitration agreement and (2) a newly promulgated arbitration agreement that had zero effect on the class size while deliberately concealing the DRA that wreaked havoc on the class size, Defendant had the audacity to ask Plaintiff to withdraw his current motion to invalidate. (*Id.*)

On November 12, 2024, Defendant filed an opposition disclosing for the first time the effective date of the DRA but still failed to reveal how many hundreds of employees had signed it. (*See* Dkt. No. 48.) Defendant now perplexingly and brazenly argues that Plaintiff has waived any right to challenge the DRA due to delay. (*Id.* at 6, fn. 1; *accord* Dkt. No. 48-1 at 3, ¶ 6.) Not so. Defendant cannot claim waiver when it actively concealed the agreement.

Defense counsel's claim that they only recently learned of the DRA's existence strains credulity given the circumstances.[8] Defendant and its counsel spent weeks calculating the number of employees

---

[7] While defense counsel may or may not have known that its client was actively promulgating an arbitration agreement during the entire first year that defense counsel represented Defendant on an employment matter, that does not buttress Defendant's ill-conceived effort to implement arbitration agreements that failed to disclose the existence of a pending class action in contravention of Rule 23 and this Court's jurisdiction. Defendant, who removed this action to federal court and as such, must bear the consequences of those Rules.

[8] *Compare* Dkt. No. 48-1 at 2, ¶ 4 ("In December 2023, LCE identified that in order to accurately identify the employees …who signed and did not sign arbitration agreements, LCE would need to manually search for signed physical copies of all colleagues' arbitration agreements …. The process took several weeks and provided LCE with a more accurate and updated number of the putative class members who did not sign arbitration agreements") *with* Dkt. No. 48-1 at 5 (October 11, 2024

not subject to arbitration agreements, which had to have included the MAAC and DRA, and months before the MDRA even existed. (*Id.*) They attributed the drop in class size to arbitration agreements yet failed to disclose that very agreement, i.e., the DRA, which was a root cause of the significant class size reduction.[9]

This concealment was a strategic effort to "pick off" class members in the most effective (but alas not the most ethical) way. Neither Plaintiff nor the putative class members were afforded transparency. The employees who signed the DRA were unaware that they were being excluded from this action because the DRA did *not* inform them about the pending lawsuit. (Dkt. No. 48-1.) The DRA was procured without employee knowledge of this litigation – and therefore without their informed consent. And, as a separate basis for invalidating the agreement, Defendant has unclean hands and cannot invoke the DRA.[10]

In *Jimenez v. Menzies Aviation Inc.*, 2015 WL 4914727, at *5 (N.D. Cal. 2015), an arbitration agreement was invalidated because the defendant did not inform putative class members about the pending action or give them an opportunity to opt out of the agreement. This parallels what happened here. Defendant's DRA failed to inform employees about this action—a deficiency Defendant evidently recognized as problematic, prompting the conversion of the DRA into the MDRA to include a reference to this Action.

By intentionally concealing the DRA from Plaintiff during the pendency of this class action, Defendant has attempted to deprive Plaintiff of the opportunity to challenge the agreement. Defendant cannot now claim that Plaintiff has waived the right to challenge the DRA when Defendant's own misconduct prevented discovery of the DRA.

---

Defendant's counsel stated: "Our firm recently learned that there is a second arbitration agreement entitled Dispute Resolution Agreement ("DRA") that was in effect after the MAAC but before the recent Mutual Dispute Resolution Agreement ("MDRA")).
[9] Dkt. No. 43 at 3-4, ¶¶ 14-15; *accord* Dkt. Nos. 43-1–43-4.
[10] Whether the Court concludes that Defendant should be estopped from enforcing the DRA, engaged in a misrepresentation, determines that Defendant waived its right to rely on the DRA, or applies the doctrine of unclean hands, the outcome should remain the same: Defendant cannot be allowed to benefit from its calculated deception and active concealment. The enforcement of such agreements would reward bad faith conduct. Plaintiff asks the Court to reject Defendant's machinations, ensuring that Defendant's misconduct does not shield it from accountability under Rule 23(d) and/or contractual and equitable doctrines.

**B.     The Misleading MDRA Should Be Invalidated**

The MDRA explicitly prohibits employees from participating in the "Cuevas and Aldana Matters." Section 10(g) of the MDRA unambiguously states: "Although nothing in this Agreement prevents me from pursuing similar individual claims in arbitration, *pursuant to this Agreement, I will not be able to participate in the Cuevas and Aldana Matters*." (*See* Dkt. No. 43-6 at § 10(g) (emphasis added).)

Defendant wants the Court to narrowly construe the phrase "I will not be able to participate in the Cuevas and Aldana Matter" to only mean "I will not be able to be a class member in the Cuevas Class Action Matter." However, the MDRA's language far exceeds Defendant's narrow and self-serving interpretation. Defendant uses the term "participate" in an expansive manner that a reasonable employee would believe prohibits them from acting as a witness, consulting with Plaintiff's counsel, or sharing insights about Labor Code violations.

If Plaintiff's counsel approached high-level managerial employees for Defendant and secured agreements from those witnesses not to "participate in the *Cuevas* Matters," it would be deemed witness tampering. Defendant's conduct here is no different.

Defendant's reliance on four cases[11] that merely use the word "participate" to justify the language of the MDRA does not negate the fact that Section 10(g) of the MDRA explicitly blocks employees (or at least will appear to many if not all employees to do so) from speaking to Plaintiff's counsel, serving as witnesses, or aiding in any capacity with this wage and hour dispute.

The placement of Section 10(g) immediately after language denying Plaintiff's allegations and restricting employees to individual arbitration sends an unmistakable message that the Cuevas and Aldana Matters are entirely off-limits. Furthermore, unlike Section 2 of the MDRA, which explicitly allows employees to file complaints with government agencies, Section 10(g) includes no similar carve-out or exception. Defendant's deliberate inclusion of certain rights in Section 2, while explicitly excluding the right to assist with the *Cuevas* and *Aldana* Matters in Section 10(g), underscores a calculated attempt to restrict and mislead employees regarding their legal rights.[12]

---

[11] *See* Dkt. No. 48 at 12:21-13:10.
[12] Defendant's contention that the issue of an unlawful PAGA waiver is beyond the scope of this motion in a non-issue. (*See* Dkt. No. 48 at 12:8-13:17.) The reference to the unlawful PAGA waiver was

Page 6
PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO INVALIDATE ARBITRATION AGREEMENTS, RESTRICT DEFENDANT FROM SOLICITING OPT-OUTS, AND ISSUE A CORRECTIVE NOTICE PURSUANT TO FRCP 23

1    Defendant argues that by providing information to Plaintiff about the employees, it is allowing
2    employees to participate in the litigation. This ignores the chilling effect that the arbitration agreements
3    have on employees' willingness to engage with Plaintiff's counsel. While Defendant may have supplied
4    certain information to Plaintiff's counsel, the MDRA explicitly prohibits employees from participating in
5    the "Cuevas and Aldana Matters." Employees may therefore fear that any cooperation could breach their
6    agreement, deterring them from coming forward.

### C. The DRA and MDRA Were Constructed to Deceptively Obtain Signatures

Defendant repeatedly asserts that its arbitration agreements are voluntary.[13] However, Defendant's concealment of important information and misrepresentation of the legal right to participate in the lawsuit, deprived employees of the ability to make informed voluntary decisions.

In the MAAC (which Plaintiff does not challenge), *in addition to an opt-out provision*, Defendant affirmatively and expressly had employees understand the following: **"I understand that arbitration is not a mandatory condition of my employment relationship with the company**." (Dkt. No. 44-1 at 24-25; emphasis added.) Employees were informed that the MAAC was a "Voluntary Agreement." (*Id.* at 25; emphasis in original.)

Defendant removed the opt-out provision and the language that informed employees that "arbitration is not a mandatory condition of [their] employment" from both the MDRA and DRA. (*Compare* Dkt. No. 44-1 *with* Dkt. Nos. 43-6 and 48-1.) Simply having the word "voluntary" in the signature block without the above assurances leaves an employee with greater uncertainty as to whether refusing to sign might cost them their job. The DRA and MDRA unquestionably offer employees a diminished level of voluntariness compared to the MAAC.

Even more importantly, the DRA's failure to disclose this pending litigation and the MDRA's

---

included to illustrate how Defendant has conflated PAGA claims with class action claims, improperly attempting to restrict employees' participation in both without providing any avenue for employees to participate in these cases in any capacity. Plaintiff does not seek relief from the Court regarding the applicability of the MDRA and DRA to the PAGA lawsuits or a ruling on a PAGA waiver, which are not before this Court.

[13] Defendant relies on *Chen-Oster v. Goldman, Sachs & Co.*, 449 F.Supp.3d 216, 265 (S.D.N.Y. 2020) objections overruled (S.D.N.Y., Sept. 15, 2021, No. 10CIV6950ATRWL) 2021 WL 4199912 and attempts to distinguish *Kater v. Churchill Downs Incorporated*, 423 F.Supp.3d 1055 (W.D. Wash. 2019) and *Jimenez*, 2015 WL 4914727. (*See* Dkt. No. 48 at 9:16-10:20.) However, Defendant's analysis of these cases is irrelevant. All three cases underscore a principle that Defendant cannot refute: class members are not to be subjected to coercion, deception, or misleading practices.

deceptive statements regarding an employee's ability to "participate" prevent the arbitration agreements from being fully voluntary because employees entered into them without full knowledge of relevant facts.

### D. Plaintiff's Requested Relief Prevents Deception and Concealment—Neither of Which Are Protected by the FAA

Defendant's argument that Plaintiff's requested relief violates the FAA misinterprets Rule 23(d)'s interplay with the FAA. Under Rule 23(d), courts can issue orders that "require…giving appropriate notice to some or all class members of any step in the action" to protect class members and fairly conduct the action, "impose conditions on the representative parties," or "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). As part of fulfilling its duty to the putative class members, a district court has the power to "limit[ ] communications between parties and potential class members." *Id.* at 101.

Limiting Defendant's ability to issue flawed and deceptive arbitration agreements does not conflict with the FAA but rather ensures that class members can make informed choices. Moreover, the general policy authorizing courts to monitor class member communications does not contravene the FAA. The Rules Enabling Act empowers the judiciary to promulgate the Federal Rules of Civil Procedure. 28 U.S.C. § 2072 (a). This authority cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (b). While the FAA provides a substantive right, Plaintiff is unaware of any case standing for the proposition that Defendant, under the FAA, has a substantive right to improper, deceptive, or otherwise misleading communications with putative class members. Thus, the general rule empowering the Court to impose restrictions on communications that affect potential class members' rights to participate in ongoing litigation does not abridge, enlarge, or modify the FAA. Plaintiff's requested relief under Rule 23(d)—modeled after other court decisions such as *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 50 (N.D. Cal. 2010) and *Doe 1 v. Swift Transportation Co., Inc.*, 2017 WL 735376 at *7 (D. Ariz. Feb. 2017)[14]—complies with the FAA, protects class members, and safeguards

---

[14] None of Defendant's attempts to distinguish the facts of the cases cited by Plaintiff should

the administration of justice and the integrity of the class certification process.

### III.     CONCLUSION

Given Defendant's unclean hands in hiding the DRA, withholding the existence of this litigation in the DRA and making employees believe via the MDRA that they cannot participate in any capacity, Defendant should not be given another bite at the apple in the midst of pending litigation.

Based on the foregoing, Plaintiff respectfully requests that the Court enter an order (1) striking Section 10(g) of the MDRA; (2) finding that the MDRA and DRA, which were issued after this Action was filed, do not apply to the claims of putative Class Members in this Action; (3) mandating the issuance of a court-approved curative notice at Defendant's sole expense; and (4) restricting Defendant from attempting to obtain from putative Class Members any opt-outs or agreements to arbitrate the claims as to this Action without Court approval.

Dated: November 26, 2024                               Respectfully submitted,

**LAW OFFICES OF MARK YABLONOVICH**

By: _/s/ Mark Yablonovich_
Mark Yablonovich
Monica Balderrama
Tony Roberts

**CAPSTONE LAW APC**
Bevin Allen Pike
Daniel Jonathan

Attorneys for Plaintiff Jose Cuevas and the Putative Class

---

carry weight with the Court. While the specific actions taken by different defendants in the various cases may vary, the cases all addressed coercive and/or misleading conduct and the court's power to remedy it. Defendant cannot escape liability because its misconduct is not identical to the misconduct of another bad actor.